WISCONSIN GAS COMPANY, Appellant, v. CRAIG D. LAWRENZ & ASSOCIATES, INC., Respondent.

*No. 672 (1974). Submitted on briefs April 12, 1976.—*
*Decided May 4, 1976.*
(Also reported in 241 N. W. 2d 384.)

For the appellant the cause was submitted on the brief of *Wallace E. Zeddun* and *Robert A. Nuernberg,* both of Milwaukee.

For the respondent the cause was submitted on the brief of *John L. North* of Beloit.

BEILFUSS, J.  The resolution of this appeal depends upon a proper construction of sec. 66.047 (1), Stats. 1971.  That section provides:

**"Interference with public service structure.**  (1) No contractor having a contract for any work upon, over, along or under any public street or highway shall interfere with, destroy or disturb the structures of any public service corporation encountered in the performance of such work so as to interrupt, impair or affect the public service for which such structures may be used, without first procuring written authority from the commissioner of public works, or other properly constituted authority.  It shall, however, be the duty of every public service corporation, whenever a temporary protection of, or temporary change in, its structures, located upon, over, along or under the surface of any public street or highway is deemed by the commissioner of public works, or other such duly constituted authority, to be reasonably necessary to enable the accomplishment of such work, to so temporarily protect or change its said structures; provided, that such contractor shall give at least 2 days' notice of such required temporary protection or temporary change to such corporation, and shall pay or assure to such corporation the reasonable cost thereof, except when such corporation is properly liable therefor under the law, but in all cases where such work is done by or for the state or by or for any county, city, village, or town, the cost of such temporary protection or temporary change shall be borne by such public service corporation."

From the complaint in this action it appears that the defendant had contracted with Shawano Lake Sanitary District No. 1 to install sewer and water works in an area around Shawano Lake.  It is not specifically alleged that the contract called for work to be done "upon, over, along or under any public street or highway."  However, the exhibits attached to the complaint itemizing the particular changes made by the plaintiff indicate that those changes occurred in the vicinity of, if not directly over, under or upon, public streets or highways.  Further-

more, the parties appear to agree that the defendant's contract called for the performance of work within the purview of the statute.

In sustaining the defendant's demurrer, the county court held: (1) That Shawano Lake Sanitary District No. 1 is an "other properly constituted authority" entitled to give written authority to interfere with the plaintiff's structures encountered by the defendant in its performance of the contract; and (2) that the plaintiff is required to bear the cost of the temporary changes because the Shawano Lake Sanitary District No. 1 is included as "any county, city, village, or town" as intended by the statute.

On appeal, the plaintiff argues that the sanitary district is not an "other properly constituted authority" entitled to give written authority to the defendant to interfere with its structures. Relying upon *Wisconsin Power & Light Co. v. Gerke* (1963), 20 Wis. 2d 181, 121 N. W. 2d 912, the plaintiff contends that the defendant's interference was unlawful and that it must therefore respond in damages for the cost of the temporary changes.

In *Gerke,* the defendant contractor was engaged in expressway construction work pursuant to a contract with the state highway commission. In the course of its work, the contractor requested the plaintiff utility to protect or remove its wires which were strung over the expressway at a certain point. The utility declined to do so. The contractor proceeded to knock down one of the utility's poles, thereby forcing the utility to remove the wires. The utility brought an action to recover the expense incurred as a result of the contractor's actions and the contractor counterclaimed for its alleged business losses caused by the utility's failure to comply with the request. From a judgment for the plaintiff, the contractor appealed.

This court, in construing "commissioner of public works, or other properly constituted authority," stated at page 186:

"From the history and context of the section, the 'commissioner of public works' must mean the board of public works (consisting of commissioners) in cities where they exist and have supervision over construction and maintenance of streets. 'Other properly constituted authority' is construed to mean the public body having supervision over construction and maintenance of the highway in question similar to the supervision vested in the board of public works in cities where such boards exist. In the case before us the properly constituted authority was the state highway commission."

Because no written authority had been obtained from the highway commission to interfere with the plaintiff's lines, the court held the contractor was prohibited from knocking down the pole. The court affirmed a recovery by the utility of the resulting damages.

Shawano Lake Sanitary District No. 1 is a town sanitary district organized pursuant to the provisions of secs. 60.30–60.309, Stats. As such, it has only the powers set forth in that section. Under sec. 60.306 (2), the town sanitary district commission "shall project, plan, construct and maintain a system or systems of waterworks, garbage or refuse disposal or sewerage, including sanitary sewers, surface sewers or storm water sewers, provide for sewage collection, provide chemical treatment of waters . . . or all of such improvements or any combination thereof necessary for the promotion of the public health, comfort, convenience or public welfare of such district, and such commission is authorized to enter into contracts and take any or all proceedings necessary to carry out such powers and duties." Nowhere is the district given authority with respect to the maintenance and construction of public streets.

The defendant argues that an agreement exists between the district and the various towns which it serves to the effect that it may undertake any excavation of the public streets as is necessary to the performance of the construction project here involved. That agreement is not a part of the record on this appeal. In any case, such an agreement would only deal with the right of the district to interfere with the use of the streets so far as is necessary to complete the project. It would have no bearing on the issue of whether, in the course of that project, the contractor is entitled to interfere with the structures of a public service corporation. That determination is required to be made on the basis of "reasonable necessity" by the "commissioner of public works or other properly constituted authority" having supervision over construction and maintenance of the highway in question.

Even conceding that no proper written authority was obtained for the defendant's "interference" with the plaintiff's structures, it does not follow that the plaintiff is automatically entitled to the recovery it seeks. The result in *Gerke* was because of the refusal by the utility to make requested changes and consequent unauthorized interference. Here, the plaintiff complied with the requests and made the changes. In considering the counterclaim in *Gerke*, this court had occasion to address itself to the considerations of policy behind sec. 66.047 (1), Stats. 1971. The court pointed out that the section was adopted in " 'recognition of the doctrine of law laid down in the *Adlam Case,* 85 Wis. 142.' "[1] In that case the rule was established that a contractor has the right to interfere with the structures and operations of a utility only insofar as it is reasonably necessary in the performance of the work involved. The court stated at page 190:

[1] *Milwaukee Street R. Co. v. Adlam* (1893), 85 Wis. 142, 149, 150, 55 N. W. 181.

"We conclude that in enacting sec. 66.047, Stats. 1959, the legislature not only adopted the standard of reasonable necessity for determining the extent to which a contractor could demand temporary changes in utility structures in order to facilitate his work, but also provided that where the parties do not agree the determination must be made by the public body having supervision over construction and maintenance of the particular highway."

This analysis, when coupled with an objective reading of sec. 66.047 (1), Stats., requires the conclusion that interference in the absence of written authority is prohibited only in the event the parties cannot agree that the changes requested are reasonably necessary. The plaintiff's compliance with the defendant's requests in this case implies an agreement that these changes were reasonably necessary or estops the plaintiff from now claiming they were not necessary. The plaintiff should not now be allowed to assert that any further written authority was required.

The plaintiff further contends that the county court erred in concluding that, in performing contract services for Shawano Lake Sanitary District No. 1, the defendant was engaged in the performance of work for a "town" and that, therefore, was under no obligation to pay to the plaintiff the reasonable cost of the temporary changes. In so holding the trial court noted that sec. 60.30 (1), Stats., provides that the definitions set forth in sec. 144.01 are applicable to secs. 60.30–60.309 dealing with the creation, powers and dissolution of town sanitary districts. The court also observed that sec. 144.01 (12) defines "municipality" as "any city, town, village, county, county utility district, town sanitary district or metropolitan sewage district." The trial court concluded that "paragraph 12, which was added to Section 144.01 in 1965 was intended by the legislature to include town sanitary districts, as referred to in

60.30 and 66.047, as said districts are desperately needed in Wisconsin to prevent further pollution of our lakes and streams."

The plaintiff points out that there is no provision in ch. 66, Stats., which makes the definition of "municipality" contained in sec. 144.01 (12) applicable to all or any part of that chapter. The introduction to the definitions contained in sec. 144.01 provides: "The following terms as used in this chapter mean. . . ." With this limitation it is not obligatory that the court accept the definition in its interpretation of a statute not within the chapter.[2]

Even if we assume that the definition of "municipality" set forth in sec. 144.01, Stats., and incorporated by reference in sec. 60.30 (1) is equally applicable to the provisions of ch. 66, it is of little assistance where the term is not used in the section under consideration. Sec. 66.047 (1), Stats. 1971, refers not to "any municipality," but to "any county, city, village, or town."

The defendant points out that sec. 2 of ch. 439, Laws of 1915, which was a part of sec. 66.047 as originally enacted, provides:

"The provisions of this act shall not be construed as modifying or restricting the existing powers of any municipality or county over streets, avenues, alleys, or highways thereof, or as repealing or amending any provisions of Chapter 608 of the laws of Wisconsin for 1913."

The defendant argues that the legislature's use of the term "municipality" in the unpublished section of the act indicates an intention to include all forms of that generic group, including town sanitary districts, within the terms of the published portion. The fallacy in the defendant's argument is that the legislature chose not

[2] *See: Town of Lafayette v. City of Chippewa Falls* (1975), 70 Wis. 2d 610, 619, 235 N. W. 2d 435; *Paulsen Lumber, Inc. v. Meyer* (1970), 47 Wis. 2d 621, 177 N. W. 2d 884.

to use the term "municipality" in the section of the law now under consideration. If the appearance of the term in the unpublished portion of the act is of any significance it is to indicate that the legislature had a specific purpose in mind in failing to use it in the published portion.

The defendant argues that the terms "town" and "town sanitary district" are interchangeable. We do not believe this construction should follow solely from the fact that both terms appear in the definition of municipality. Such construction would require the conclusion that there is no distinction between any of the units of government which are generally referred to as "municipalities." The generally recognized rule is that while town sanitary districts may be referred to as "municipalities" or "municipal corporations," they are separate and distinct legal entities from the town or towns by which they are organized. They are "municipalities" in the broad sense of the term only.[3]

It is true that under sec. 60.301, Stats., the town board of any town has the power to establish town sanitary districts where the conditions set forth in sec. 60.303 (3) are found to exist. However, the latter section provides that, upon creation, the town sanitary district "shall be a body corporate with the powers of a municipal corporation for the purposes of carrying out the provisions of sections 60.30 to 60.309." One author has summarized the law with respect to the relationship which exists between the town sanitary district and the town or towns which it serves as follows:

"Even when formed by municipalities and counties, sewerage districts and authorities are separate corporations. Thus, speaking of a sewerage district, the Maine court says: 'The defendant is a separate corporation,

---

[3] *See: Page v. Metropolitan St. Louis Sewer Dist.* (Mo. 1964), 377 S. W. 2d 348, 362; 3A Antieau (1970), *Independent Local Government Entities*, p. 30G–3, sec. 30G.00.

although geographically the same territory [as the City], and established by the legislature which had complete authority to so establish. The units are for distinct and separate purposes.'" 3A Antieau (1970), *Independent Local Government Entities*, p. 30G–12, sec. 30G.07, citing *Baxter v. Waterville Sewerage Dist.* (1951), 146 Me. 211, 79 Atl. 2d 585.

Applying this principle a town sanitary district is not merely the agent of the town or towns which it serves.

Our conclusion that sec. 66.047 (1), Stats. 1971, cannot be read to include town sanitary districts is supported by the legislature's treatment of metropolitan sewerage districts in secs. 66.20–66.26. Under sec. 66.20, "municipality" is defined as "town, village, city or county." Under sec. 66.22, metropolitan sewerage districts "may be initiated by resolution of the governing body of any municipality." Section 66.24, relating to the powers and duties of such districts, provides in sub. (5) :

"(5) CONSTRUCTION. (a) *General.* The district may construct, enlarge, improve, replace, repair, maintain and operate any works determined by the commission to be necessary or convenient for the performance of the functions assigned to the commission.

"(b) *Roads.* The district may enter upon any state, county or municipal street, road or alley, or any public highway for the purpose of installing, maintaining and operating the system, and it may construct in any such street, road or alley or public highway necessary facilities without a permit or a payment of a charge. Whenever the work is to be done in a state, county or municipal highway, the public authority having control thereof shall be duly notified, and the highway shall be restored to as good a condition as existed before the commencement of the work with all costs incident thereto borne by the district. *All persons, firms or corporations lawfully having buildings, structures, works, conduits, mains, pipes, tracks or other physical obstructions in, over or under the public lands, avenues, streets, alleys or highways which block or impede the progress of district facilities, when in the process of construction, establishment or repair shall upon reasonable notice by the dis-*

*trict, promptly so shift, adjust, accommodate or remove the same at the cost and expense of such individuals or corporations, as fully to meet the exigencies occasioning such notice."* (Emphasis supplied.)

It should be noted that the general definition of "municipality" in sec. 144.01, Stats., includes metropolitan sewage districts.

Had the legislature believed the language of sec. 66.047 (1), Stats. 1971, broad enough to include all entities generically defined as "municipalities," the emphasized provisions set out above for metropolitan sewerage districts would not have been necessary.

We are of the opinion that sec. 66.047 (1), Stats., imposes a duty upon a public service corporation, such as the plaintiff, to temporarily protect or change its structures whenever it is reasonably necessary to enable a contractor to accomplish his work "upon, over, along or under any public street or highway." However, the plain language of the statute requires the contractor to bear the reasonable cost of such protection or changes except where the public service corporation is "properly liable therefor under the law" or where the "work is done by or for the state or by or for any county, city, village, or town." Work performed for a town sanitary district is not within the exception.

The rationale used by the trial court to conclude that a town sanitary district should be included in the exception of sec. 66.047 (1), Stats., is good public policy. However, where a statute imposes an obligation upon a person or party that did not exist in common law, the legislature and not the courts should determine and express that public policy. We invite the legislature to review the statute.

The order sustaining the demurrer should be reversed. Further proceedings may be necessary to establish the reasonable costs of the plaintiff's services.

*By the Court.*—Order reversed and remanded for further proceedings.